IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**SEYOUM ALI CLARK**                                                                  **PLAINTIFF**
**ADC #120783**

V.                                  NO: 1:16-CV-00083 BSM-PSH

**BRADLEY HOWARD ROBERTSON,** *et al.*                           **DEFENDANTS**

PROPOSED FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following Proposed Findings and Recommendation have been sent to Chief United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

I. Introduction

Plaintiff Seyoum Ali Clark filed a complaint pursuant to 42 U.S.C. § 1983 on July 11, 2016, against multiple defendants. Clark's claims against the Arkansas Department of Correction (ADC), Correct Care Solution, and Sheila Armstrong were previously dismissed for failure to state a claim. *See* Doc. Nos. 16, 34, 41 & 50. Clark's claims

against medical defendants Mitchell Jones and Dr. Robert Reichard were previously dismissed due to Clark's failure to exhaust his available administrative remedies. *See* Doc. Nos. 68 & 70. The remaining defendants are Bradley Howard Robertson, Clinton Baker, Thomas Finney, and Johnny M. Morris (the "Defendants").

Clark filed this lawsuit after an incident in December 2015 in which defendant Robertson ordered him to move to a top tier cell, and he fell while carrying his personal property up the stairs. Doc. Nos. 2 & 9. Clark claims Robertson was aware of medical restrictions preventing him from climbing stairs. Doc. No. 9 at 14. Clark also alleges that Robertson knew Clark had a medical restriction preventing him from carrying more than 35 pounds, and that he was forced to carry his personal property weighing 47 pounds up the stairs. *Id.* at 15. Clark further alleges that after his fall, defendants Robertson and Baker delayed calling medical and accused him of faking the fall. *Id.* at 7. Clark also sues because he was issued two disciplinaries – one for refusing an earlier move ordered by defendant Morris and one issued after he refused to submit to a urine test after his fall. *Id.* 12-13 & 14-15. Clark sues defendant Finnie for not calling witnesses in the disciplinary hearings. *Id.* at 11.

Clark filed a motion for summary judgment and a supporting brief (Doc. Nos. 87 & 88), and the Defendants filed a response (Doc. No. 91).[1] The Defendants subsequently filed a motion for summary judgment, a brief in support, and a statement of facts asserting that they are entitled to summary judgment with respect to Clark's claims. Doc. Nos. 95-

---

[1] Because Clark's brief was received before his motion, both were docketed as motions.

97.  Clark filed a response (Doc. No. 99); Defendants filed a reply (Doc. No. 100); and Clark filed an addendum to his response (Doc. No. 101).  For the reasons described herein, the undersigned recommends that Clark's motions for summary judgment be denied, and that the Defendants' motion for summary judgment be granted.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .".  Fed. R. Civ. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ.

P. 56(c)(1)(B).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts

The facts listed below are taken from those submitted by Defendants that are supported by documents attached to their motion for summary judgment.  Because Clark failed to specifically controvert the facts set forth in Defendants' statement of undisputed facts, Doc. No. 96, those facts supported by documentary evidence are deemed admitted. *See* Local Rule 56.1(c).  However, the Court notes those facts disputed by Clark in his motions for summary judgment.[2]

Clark was transferred to the ADC's Grimes Unit from the Pulaski County Jail in the Fall of 2015.  *Id.* at 21-22.  Clark is a 40-year-old inmate with a reported history of back problems dating back to 2008.  Doc. No. 100-1, *Deposition of Seyoum Clark*, at 15. Clark's lawsuit concerns two disciplinaries he received in December 2015 and a fall he suffered after being ordered to move to an upper level cell.  Doc. No. 2.  Prior to the incidents at

---

[2] Clark did not dispute any facts listed by Defendants in his response to their motion for summary judgment or his addendum to that response.  Instead, he complained that Defendants had not submitted a complete copy of his deposition transcript.  *See* Doc. Nos. 99 & 101. Defendants subsequently submitted a complete copy of the transcript.  *See* Doc. No. 100-1.

issue in this lawsuit, Clark did not know defendants Robertson, Baker, Finnie or Morris. *Id*. at 21-22.

### *December 8, 2015 Disciplinary*

At all times relevant to this action, defendant Morris was a correctional officer at the ADC. Doc. No. 95-6, *Declaration of Johnny Morris*. On December 8, 2015, Morris was directed to move Clark to another cell. *Id*. Morris arrived at Clark's cell and gave him a direct order to pack his things because he was being moved from barracks 3, cell 107B to barracks 4, cell 213B. Doc. No. 95-6; Doc. No. 95-2. Clark claimed that he had a medical restriction preventing him from going upstairs or having a top bunk. Doc. No. 95-6; Doc. No. 100-1 at 50. Morris checked the prison's electronic offender management information system (eOMIS) which contains information about each prisoner including any medical restrictions that they have been given by the prison's medical providers. *Id*. When Morris checked eOMIS, he found that Clark did not have any medical restrictions that prevented him from being assigned to a top bunk. *Id*. Morris moved Clark to another cell that was downstairs with a bottom bunk. Doc. No. 100-1 at 49-51, 53; Doc. No. 95-2; Doc. No. 95-6. Morris had never met Clark before December 8, 2015. Doc. No. 100-1 at 48-49; Doc. No. 95-6. He had no further contact with Clark after he moved him on December 8, 2015. Doc. No. 100-1 at 51 & 56; Doc. No. 95-6.

Morris wrote Clark a disciplinary violation for refusing to move from Barracks 3 to Barracks 4 and for lying to a staff member the same day. *Id*. at p. 50; Doc. No. 95-2, *Disciplinary Violation dated 12/08/15*; Doc. No. 95-6. Clark was found guilty of both rule violations by a neutral disciplinary hearing officer and he was given 15 days in punitive

5

isolation and a reduction in class status. Doc. No. 100-1 at 52; Doc. No. 95-3, *Disciplinary Hearing Action Form*. Clark's disciplinary conviction was upheld on appeal by the warden, the disciplinary hearing administrator, and ADC Director Wendy Kelley. Doc. No. 100-1 at 54; Doc. No. 95-3 at 3; Doc. No. 95-4, *Disciplinary Appeal*; Doc. No. 95-5, *Director Wendy Kelley's Response to Clark's Appeal*. Clark testified that his claim of "cruel and unusual punishment" against Morris was based on the disciplinary Morris issued. Doc. No. 100-1 at 51.

### *December 14, 2015 Move and Fall*

On December 14, 2015, defendant Robertson was making cell assignments in Clark's barracks. Doc. No. 100-1 at 22; Doc. No. 95-18, *Declaration of Bradley Robertson*. Robertson gave Clark a direct order to pack his things because he was moving to 4 barracks to an upper tier where he would have an upper bunk. Doc. No. 100-1 at 23; Doc. No. 95-18. Robertson and Clark did not know each other. Doc. No. 100-1 at 23. When Clark told Robertson that he had a medical restriction that prevented him from being assigned to an upper bunk, Robertson informed him that he was going to call medical personnel to verify his claim. Doc. No. 100-1 at 23. Clark admittedly did not have a medical restriction that prevented him from being assigned to an upper bunk when he was ordered by Robertson to relocate to another cell. *Id*. at 70.

Robertson reviewed Clark's records in the prison's eOMIS system and called the infirmary to attempt to verify Clark's claim that he had a medical restriction. Doc. No. 95-18. Robertson was told that no such restriction existed for Clark. *Id*. After he was told by the infirmary staff that Clark did not have a medical restriction, Robertson ordered Clark

6

to pack his things. Doc. No. 100-1 at 25. Clark packed his belongings; Robertson let him out of his cell; and Clark walked across the hallway to a different barracks. Doc. No. 100-1 at 25. Robertson did not escort Clark to 4 barracks but remained at his podium in the vestibule. *Id*. at 66; Doc. No. 95-18. Clark walked into 4 barracks alone and began to go up the stairs. Doc. No. 100-1 at 67. Clark walked up approximately 15-17 stairs before he fell. *Id*. None of the Defendants were in the barracks at the time Clark fell on the stairs. *Id*.

Robertson was the first officer to respond after Clark fell. *Id*. at 69; Doc. No. 95-18. Robertson immediately called his supervisor, defendant Clinton Baker, who was the second person to arrive when Clark fell. Doc. No. 100-1 at 70; Doc. No. 95-18; Doc. No. 95-17, *Declaration of Clinton Baker*. After the fall, the medical team arrived and stabilized Clark's neck to prevent injuries. Doc. No. 100-1 at 79. Clark agrees that officers responded correctly by not moving him and waiting on medical personnel to move him or he could have been injured further following the fall. *Id*. However, Clark alleges that Baker accused him of faking the fall and that Robertson and Baker waited approximately 15 minutes before calling for medical assistance. *Id*. at 75-76.

Baker then escorted Clark to the infirmary and was present while he was provided medical care. *Id*. at p. 76. After medical personnel stabilized Clark, Baker, with the assistance of another officer, moved Clark from the stretcher to a mat on the floor where the infirmary staff could watch him on camera. *Id*. at 76; Doc. No. 95-17. Clark maintains that after he was placed on the mat, Baker dropped him and the mat on the floor about two and a half feet. Doc. No. 100-1 at 77. Clark admits that he never filed a grievance about

7

Baker or anyone else dropping him to the floor. Doc. No. 100-1 at 81-82. The only grievance Clark filed about this incident was Grievance 16-361 which complained that Morris and Robertson wrote him a disciplinary violation after he refused an upper tier cell assignment and that Baker accused him of faking a fall in the barracks. *Id*. at 84; Doc. No. 95-14, *Grievance 16-361*.

### *December 14, 2015 Disciplinary*

While Clark was in the infirmary, Baker asked Clark for a urine sample. Doc. No. 100-1 at 76. Clark refused and told Baker he "could squeeze it out of his penis." *Id*. Baker maintains Clark did not provide any reason for the refusal to submit to a routine urine test. Doc. No. 95-17. Baker told Clark he was going to get a disciplinary for refusing to take a urine test, and the two had no further contact. Doc. No. 100-1 at 76; Doc. No. 95-17. Robertson subsequently issued Clark the disciplinary violation. Doc. No. 95-18*;* Doc. No. 95-10, *Disciplinary Violation*; Doc. No. 95-11, *Disciplinary Action Form*; Doc. No. 95-18. The disciplinary stated:

> On 12/14/15 at approximately 7:30 p.m. Cpl. Brad Robertson was working Zone 1, Housing 1 when he gave Inmate Clark, Seyoum #120783 who is assigned to barracks 7 bed 6 a direct order to move to barracks 4 cell 205A. Inmate Clark refused and stated he had a lower tier script and would not move. He consulted with medical and checked e-OMIS to see if Inmate Clark did in fact have a bottom tier script. Neither medical nor e-OMIS showed a bottom tier or bottom bed script listed for Inmate Clark's medical restrictions. He then gave Inmate Clark a direct order to move to barracks 4 cell 205A per the move sheet or face disciplinary action. Inmate Clark then picked up his property and started into barracks 4 and stated "I guess I am going to have to fill out a 1983". A few minutes later inmates came to 4 barracks door and said somebody had fallen down the stairs. He entered 4 barracks and found Inmate Clark lying several feet from the base of the east stairwell. He called for responders to 4 barracks for a possible medical emergency. He asked Inmate Clark what happened he stated that he had

fallen down the stairs and he had a bottom tier script Inmate [C]lark claimed that he was not supposed to be going upstairs. Security staff and medical staff arrived entered 4 barracks placed Inmate Clark on a stretcher. Inmate Clark was then escorted to medical for evaluation and treatment. Inmate Clark's property was secured and later delivered to medical. It was later determined through reviewing the 4 barracks dayroom camera that Inmate Clark was attempting to climb the east stairwell with all his property when he claimed he fell. Inmate Clark does have a no lifting anything heavier than 35 lbs script. Inmate Clark's property was weighed at the Grimes unit laundry and its approximate weight was (47lbs) that is 12 lbs above his medical weight restriction. Inmate Clark was placed in medical under a 24 hour observation. Inmate Clark was order to submit to a drug test to which he refused. Digital photos were taken of the inmate and his property. Therefore I, Cpl. Brad Robertson am charging Inmate Clark, Seyoum #120783 with the following rule violations: 2-16 and 12-3.

Doc. No. 95-10. A disciplinary hearing was held December 23, 2015, and Clark was found guilty of both rule violations. Doc. No. 95-11 at 1. Clark's only reported statement was that the disciplinary was not written by Robertson, and that the officers were conspiring against him. *Id.* As punishment, Clark received 30 days in punitive isolation, his good time class was reduced to IV, and he received 60 day restrictions on phone, commissary, and visitation. *Id.* Clark appealed to the warden, disciplinary hearing administrator, and ADC director, but his convictions were upheld at all levels. *Id.* at 4; Doc. No. 95-12.

### *Disciplinary Hearings*

A hearing was held on the December 8, 2015 disciplinary on December 28, 2015. Doc. No. 95-3. A hearing was held on the December 14, 2015 disciplinary on December 23, 2015. Doc. No. 95-11. Clark's only complaint against defendant Finnie is that when Finnie listed witnesses on Clark's disciplinary violations, the witnesses were not called to the disciplinary hearings. Doc. No. 100-1 at 56-57, 72 & 75. At all times relevant to this action, Finnie was an administrative assistant at the ADC. Doc. No. 95-7, *Declaration of*

9

*Thomas Finnie.* The only contact Finnie had with Clark was when he delivered the two disciplinary violations and recorded the names of the witnesses Clark provided him. *Id*. Once Finnie served Clark with the two disciplinary violations and listed his witnesses, he also contacted the witnesses to get any available statements prior to the hearing, and scanned the witness statements into the eOMIS system. *Id*.; Doc. No. 95-8, *Witness Statement Regarding Nurse Lomax*; Doc. No. 95-9, *Witness Statement Regarding Jones, Richard, Jones, Johnson & Tyson*. Finnie provided the documents to the Chief Security Officer Vernon Robertson who referred the disciplinary violations to the disciplinary hearing officer. Doc. No. 95-2, *Major Disciplinary*. According to Finnie, it was up to the disciplinary hearing officer to decide the relevance and necessity for any witnesses, and he did not decide which witnesses were called to a hearing by the disciplinary hearing officer. Doc. No. 95-7.

### Clark's Medical Restrictions

At the time that Robertson assigned Clark to 4 barracks on an upper tier and an upper bunk, Clark did not have a medical restriction that prevented him from walking up stairs or being housed on an upper bunk. Doc. No. 100-1 at 70. On December 18, 2018, Clark submitted a request for a copy of his medical restrictions. Doc. No. 95-13, *Clark's Medical Request Form*. Nurse Armstrong stated in response to the Medical Request Form that Clark did not have any medical restrictions. *Id.* On December 21, 2015, Clark filed Grievance GR-15-1840 because he believed that Armstrong was mistaken about his medical restrictions. Doc. No. 95-15, *Grievance GR-15-1840*. In response to the grievance, Nurse Armstrong reviewed Clark's medical records and informed him on

10

December 22, 2015, that she had been mistaken and he did have a medical restriction that: 1) prohibited his assignment requiring lifting of heavy material in excess of 35 pounds/and/or overhead work in excess of 4 hours per day; 2) required him to run, jump, or crawl. *Id.* On January 25, 2016, Clark was also given a restriction that required he be housed on a lower tier without stairs on a lower bunk for one year. Doc. No. 95-16, *Health Restrictions*.

### IV. Analysis

**A.   Sovereign Immunity**

Clark brings suit against the Defendants in both their official and individual capacities and seeks compensatory and punitive damages. *See* Doc. Nos. 2 & 9. A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). Accordingly, the undersigned recommends that Clark's official capacity claims for money damages be dismissed with prejudice.

**B.   Qualified Immunity**

Defendants argue they are entitled to qualified immunity with respect to Clark's individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a

11

question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### *Due Process Challenge to Disciplinary Action*

Clark does not specifically raise a separate due process claim in his complaint (Doc. No. 2) or amended complaint (Doc. No. 9). Rather, he claims that the disciplinaries issued by defendants Morris and Robertson constituted cruel and unusual punishment (*see* Doc. No. 9 at 13 & 15) and that defendant Finnie violated his due process rights by not calling witnesses on Clark's behalf during his disciplinary hearings (*see* Doc. No. 9 at 9 & 11).

An inmate's disciplinary conviction and placement in administrative segregation or punitive isolation does not constitute cruel and unusual punishment as prohibited by the Eighth Amendment unless the conditions an inmate endures there are "cruel and barbaric." *See Jones v. Mabry,* 723 F.2d 590, 595 (8th Cir. 1983). Clark does not describe the conditions he endured as a result of the disciplinaries he challenges, and accordingly, he does not allege sufficient facts to support an Eighth Amendment claim based on the

disciplinaries he received. The Court proceeds to analyze whether Clark instead states a due process claim based on those disciplinaries.

To state a Fourteenth Amendment due process claim, a plaintiff must "demonstrate that he was deprived of life, liberty or property by government action." *Phillips v. Norris,* 320 F.3d 844, 846 (8th Cir. 2003). Clark was not deprived of life or property; accordingly, he must identify the deprivation of a liberty interest to sustain a due process challenge to his prison disciplinary proceeding. *Id.* at 847; *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A prisoner has no liberty interest in having certain procedures followed in the disciplinary process; rather, the liberty interest arises from the "nature of the prisoner's confinement." *Phillips*, 320 F.3d at 847. "In order to determine whether an inmate possesses a liberty interest, we compare the conditions to which the inmate was exposed in segregation with those he or she could 'expect to experience as an ordinary incident of prison life.'" *Phillips*, 320 F.3d at 847 (quoting *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997)).

Clark does not describe the conditions he suffered as a result of the disciplinary he received. He states that he was placed in punitive isolation for 30 days, had his good time class reduced,[3] and received phone, commissary, and visitation restrictions. Doc. No. 9 at 14-15. An inmate has no liberty interest in avoiding segregated confinement, as long as

---

[3] Clark does not allege that he lost good time credits but that he lost the opportunity to earn good time credits when his classification was changed. While a prisoner may have a liberty interest in keeping good time credits he has already earned, he can only pursue the restoration of those good time credits in a federal habeas action, after he has exhausted all of his available remedies in state court. 28 U.S.C. § 2254; *Edwards v. Balisok*, 520 U.S. 641, 643–44; *Heck v. Humphrey,* 512 U.S. 477 (1994); *Portley–El*, 288 F.3d at 1066–67. Similarly, a prisoner cannot obtain damages for the loss of any wrongfully taken good time credits until his allegedly improper disciplinary convictions are reversed by the highest state court or in a federal habeas action. *Id.*

the conditions do not amount to an "atypical and significant" hardship that would give rise to due process protection as set forth in *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995). The Eighth Circuit Court of Appeals has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*." *Portly-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002). Because Clark describes no change in conditions that could constitute the deprivation of a liberty interest, he fails to state sufficient facts to support a claim against the Defendants based on the disciplinary process. Accordingly, the Court does not reach any specific complaints Clark makes about the disciplinary process. Defendants should be awarded summary judgment on these claims, and Clark's motion for summary judgment should be denied.

Further, to the extent Clark bases his claims on the Defendants' alleged failure to follow the prison's grievance or disciplinary procedures, he fails to state a constitutional claim. Prisoners do not have a federally protected due process right to require prison officials to comply with internal rules or procedures. *See Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997).

Finally, to the extent Clark raises a defamation claim based on the publication of disciplinary convictions he received (*see* Doc. No. 9 at 11), he fails to state a constitutional claim. In *Paul v. Davis*, 424 U.S. 693 (1976), the United States Supreme Court held that defamation by a state or local official does not by itself violate rights protected by the federal constitution. In addition, in *Johnson v. Barker*, 799 F.2d 1396, 1399 (9th Cir. 1986), the court stated that defamation is not actionable under section 1983 and that damage to reputation, standing alone, does not state a claim for relief, because reputation is "neither

14

'liberty' nor 'property' guaranteed against state deprivation without due process of law." *See also Jones v. McNeese*, 746 F.3d 887, 898 (8th Cir. 2014). The Court finds that any defamation claim raised by Clark should be dismissed for failure to state a claim upon which relief may be granted.

### *Eighth Amendment Deliberate Indifference Claims*

Clark's Eighth Amendment claim is based the following allegations: (1) that Robertson knew that Clark had a medical restriction prohibiting him from lifting more than 35 pounds but made him carry his personal property weighing 47 pounds up the stairs which contributed to his fall; (2) that Robertson and Baker waited 10 to 15 minutes before calling for medical assistance and accused him of faking his fall; and (3) that Baker dropped him to the floor in the infirmary after his fall.

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' . . . , proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To succeed with a deliberate indifference claim based on interference with medical care, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, 'the objective seriousness of the deprivation should also be measured 'by reference to the *effect* of delay in treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995)).

15

An inmate making such an allegation is therefore required to "'place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'" *Id.* (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). If the inmate does not, he fails to raise a genuine issue of fact on an essential element of his claim, and summary judgment is appropriate. *Id.*

Although Clark initially claimed that Robertson knew he had a medical restriction preventing him from going upstairs, Clark conceded in his deposition that he did not in fact have such a restriction on the date that Robertson ordered him to move to an upstairs cell. *See* Doc. No. 100-1 at 70. Clark also alleges that Robertson was aware of Clark's medical restriction that precluded him from lifting more than 35 pounds. However, the evidence in the record does not indicate that Robertson was aware of **any** medical restrictions when he ordered Clark to take his belongings upstairs. Robertson's declaration states that he checked Clark's electronic records and called medical personnel to determine if Clark had any medical restrictions but there were none. Doc. No. 95-18 at 2 ("I then returned to Clark and told him that medical did not verify his claims and that there was nothing in eOMIS about him having a medical restriction."). In his deposition, Clark acknowledged that if his script had been listed when Robertson checked, he would have seen that he had a limitation on carrying more than 35 pounds. Doc. No. 100-1 at 70. Nurse Armstrong's response to Clark's medical request supports that his restrictions did not appear on his medical record even a few days after the incident. *See* Doc. No. 95-15. The fact that Robertson became aware of the restriction before he wrote the disciplinary after Clark's fall does not show that Robertson was aware of the restriction when he ordered Clark to go

16

upstairs. Accordingly, there is no evidence that Robertson was aware of Clark's restriction on carrying more than 35 pounds but deliberately disregarded it. Robertson should therefore be awarded summary judgment on Clark's individual capacity claims.

Clark accuses both Robertson and Baker of waiting 10-15 minutes before calling for medical help after they responded to his fall. Robertson and Baker both maintain they called for help immediately. However, any dispute regarding the alleged delay in treatment is immaterial because Clark has not submitted any evidence that a delay worsened his condition. Accordingly, Clark and Baker should be granted summary judgment on Clark's claim stemming from an alleged delay in treatment.

Clark also alleges that Robertson and Baker accused him of faking his fall and injuries. Specifically, Clark alleges that Robertson accused him of faking and that Baker "came in screaming at me to get your faking ass up" and threatened to lock him up. Doc. No. 9 at 7. Verbal insults or threats generally do not rise to the level of a constitutional violation. *See Hopson v. Fredericksen,* 961 F.2d 1374, 1378 (8th Cir. 1992). The only exception to this rule is when a verbal threat rises to the level of a "wanton act of cruelty" such that the inmate is in fear of "instant and unexpected death at the whim of his allegedly bigoted custodians." *Burton v. Livingston,* 791 F.2d 97, 99–100 (8th Cir. 1986). Clark's allegation that Robertson and Baker accused him of faking his fall does not approach this threshold and does not support an actionable 1983 claim. Accordingly, to the extent Clark raises claims based on these allegations, he fails to state a claim for relief and the claims should be dismissed.

Finally, Clark alleges that Baker dropped him on the floor while he was in the infirmary. Doc. No. 9 at 8. Baker maintains that he and another officer moved Clark to the floor so that he could be observed by camera from the control booth. Doc. No. 95-17 at 2. In his deposition testimony, Clark admits that he never filed a grievance about Baker or anyone else dropping him to the floor. Doc. No. 100-1 at 81-82. The only grievance Clark filed about this incident was Grievance 16-361 which complained that Morris and Robertson wrote him a disciplinary violation after he refused an upper tier cell assignment and that Baker accused him of faking a fall in the barracks. *Id.* at 84.[4] The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211. Because Clark did not file a grievance complaining about being dropped to the floor, he has not exhausted his administrative remedies as to this claim, and dismissal is mandatory. Accordingly, defendant Baker should be awarded summary judgment on this claim.

## IV.  Conclusion

For the reasons described herein, the undersigned recommends that Clark's motions for summary judgment (Doc. Nos. 87 & 88) be denied and that Defendants' motion for

---

[4] Clark complains that this grievance was held for three and a half months and then rejected as untimely. The record indicates that the grievance and its appeal were rejected. *See* Doc. No 95-14. However, the Court does not examine whether or not this grievance was properly rejected. Clark's claim against Baker based on him being dropped to the floor is unexhausted because Clark admittedly did not describe that claim in this grievance or any other.

summary judgment (Doc. No. 95) be granted. Clark's official capacity claims for money damages are barred by the doctrine of sovereign immunity. Clark fails to state a claim based on the disciplinaries he received, and those claims should be dismissed without prejudice. Finally, Defendants are entitled to qualified immunity on Clark's individual capacity Eighth Amendment claims because the undisputed material facts show that they were not deliberately indifferent to Clark's serious medical needs. Clark's Eighth Amendment claims should be dismissed with prejudice.

DATED this 4th day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE